Hans M. Hanson died intestate in May, 1919. In August, 1919, Oscar Greenland qualified as administrator of his estate, being appointed by the county court of Griggs county. The administrator later filed an inventory and proceeded to handle the affairs of the estate, paying claims, widow's allowance, taxes, mortgages, interest on mortgage indebtedness and the like, and selling under the direction of *Page 552 
the county court property belonging to the estate. Greenland, the administrator, died in September, 1926, without having filed a report in the county court. His account as administrator had been kept in the First National Bank of Binford, of which he was an officer. Upon his death Otto Pritz and Bertha Greenland were appointed executors of his estate, the latter being the widow and sole legatee, and one Ole Danielson was appointed administrator of the estate of Hans M. Hanson, deceased, as the successor of Oscar Greenland. Difficulty was experienced immediately in adjusting the accounts of the Hanson estate in such a manner that the administrator could know that he had received all the property belonging to the estate. Upon the petition of Danielson, Greenland's executors and sureties upon his bond as administrator were ordered to render an account within thirty days. In compliance with this order an account based largely upon the bank records was presented by the executors of the estate of Oscar Greenland, to the approval of which objections were made by Danielson as administrator of the Hanson estate. During the process of administration the administrator had sold property of the estate, both real and personal, and in the account presented by his executors he was charged with the proceeds of such sales which had been deposited in his account in the bank as administrator. Likewise, he was credited with whatever had been paid out of this account. It appeared that some of the money ($4,796.97) entered as receipts in the bank account of the administrator was paid to him by one Vrem who had purchased a quarter section of land which was the separate property of the widow, Ida M. Hanson. With the payments for this land included, the bank account showed receipts of $19,552.49 and expenditures of $19,525.16, leaving a balance in the bank for the present administrator of $27.33. The probate court, however, did not hold the first administrator accountable as administrator for the proceeds of the sale of the Ida Hanson land which had been so deposited in his account as administrator, and it disallowed several hundred dollars of expenditures shown, the result of the action of the probate court being to find that the administrator had expended $3,611.92 more than he had received as administrator of the estate. From a decree so allowing the account of the former administrator Danielson appealed to the district court, and from a judgment of the *Page 553 
district court modifying the decree of the county court Danielson again appeals.
We have occasion to consider here only the issues presented on the record which are created by objections to the allowance of certain items of the account. These objections are concerned both with charges to be made on account of the receipt of property belonging to the estate and credits to be given for moneys expended. As it will be necessary to state the facts in connection with each contested item, a more extended general statement of the facts with reference to the administration of the estate is not required.
The main objection to the account is concerned with the proceeds of the sale of the Ida Hanson land and with payments to or for the account of Ida Hanson.
In the petition for letters of administration the character of the estate is referred to as 480 acres of farm land in certain sections in Nelson county and a hotel property in Cooperstown. In the inventory 480 acres of land and the hotel property satisfying the general description in the petition are described and appraised, but one quarter section was stricken from the inventory, ink marks being drawn through the lines. The circumstances in which this description was crossed out do not appear. This quarter section, however, was sold to one Vrem who afterward and before the death of Greenland made payments aggregating $4,796.97. It was stipulated at the hearing in the district court that this land had stood in the name of Ida Hanson, the widow of Hans M. Hanson, deceased, for more than twenty years. Ida Hanson signed the contract for the sale individually, but the payments were made to Greenland and, as previously stated, he placed the proceeds in the estate account in the bank, thus mingling them with the proceeds of the sale of other property which had belonged to the estate and with miscellaneous collections.
Soon after the appointment of the administrator in 1919 an order was entered in the probate court directing him to pay to Ida Hanson as a family allowance $35 per month from September 1, 1919. These payments, if made, up to the time of the death of the administrator would have amounted to $2,940. While these payments were not regularly made, the account and stipulated facts show beyond question that an amount much in excess of this figure was paid to Ida Hanson out *Page 554 
of the bank account of Greenland, administrator. The district court found that the amount so paid was $4,090.20 and it charged the administrator with $1,150.20 as representing an excess paid to the widow above the amount authorized by the order of the county court. Under the stipulated facts it is clear that the amount paid out by the administrator for or on account of the widow is much in excess of $4,090.20, if she, rather than the estate, is chargeable with payment of liens and incumbrances on her separate property. It appears that Ida M. Hanson and Hans M. Hanson had jointly mortgaged the quarter section owned by Ida Hanson and which was later sold by her to Vrem and a quarter section owned by Hans M. Hanson. The account and the stipulated facts show that Greenland paid on account of joint mortgages $6,121.93; also, that he paid out of this account $132.20 as taxes on the Ida Hanson quarter section. If Ida Hanson is chargeable with an equal share of the joint mortgage, there has been paid on account of her mortgage indebtedness $3,060.96 and on account of taxes $132.30 in addition to the cash paid to her or for her use and benefit of $4,090.20, or a total of $7,283.36. Under the account as approved by the district court the administrator is not charged with the proceeds of the Ida Hanson quarter section, but he is credited, as administrator, with all payments made to discharge mortgages and taxes on this same land.
The position of the appellant with respect to this matter, as we understand it, is that the administrator should now be estopped to contend that the proceeds of the Ida Hanson land do not belong to the estate and that he should be charged with such receipts. Then the further contention is made that the administrator should not be credited with any money paid to the widow except such as was regularly paid in accordance with the order of allowance, and especially should no credit be given for the amount paid to discharge mortgages, because claims for such were not presented and proved in the regular way. In addition an alternative contention is made that if the administrator is not chargeable as such for the proceeds of the Ida Hanson land, he should not be credited in any event with estate moneys expended to discharge liens thereon. The first contention is, in our opinion, clearly without merit in light of the stipulated facts. This quarter section of land belonged to Ida Hanson. Neither she nor the administrator of the Hans Hanson estate should be precluded from asserting her ownership by reason of *Page 555 
the fact that the administrator was allowed to, or for convenience did, deposit the proceeds in the estate account. No party now objecting is shown to have been prejudiced in the least degree by any such act of the administrator or of Ida Hanson. There is no estoppel and the administrator is not chargeable as such for the Vrem payments.
Is the administrator entitled to credit for expenditures made in discharging liens and incumbrances on this separate property of Ida Hanson?
At the time these liens were discharged Greenland had in his possession both funds belonging to the estate and funds belonging to Ida Hanson, although but one account was kept. No proof of claim was submitted in probate court from which it could be determined that the mortgage indebtedness was, as between the two debtors, that of one rather than the other. For aught this record shows the entire mortgage indebtedness might have been that of Ida Hanson and the liability of Hans Hanson that of a surety or vice versa. In other words, there was no proof before the district court by which the indebtedness could be apportioned or any right of contribution fixed on any other basis than the separate ownership of the property mortgaged. There is no basis for any presumption that the administrator, in discharging the mortgage and other liens, used funds of the estate to relieve the Ida Hanson lands of incumbrances. Much less is it shown that she had a right to call upon him to do so. It is not to be presumed that an owner of land will mortgage the same without receiving value in exchange and where the estates of two or more persons are subjected to one common incumbrance it should be presumed, in the absence of evidence, that the indebtedness as between the obligors is proportionate to their respective titles. Weed v. Calkins, 24 Hun, 582. In these circumstances either debtor paying more than his proportionate share of the indebtedness is entitled to contribution from the other. See 2 Jones, Mortg. 8th ed. §§ 1393 and 1394. No claim having been allowed in probate court and it now appearing that the administrator at the time of paying the mortgages in question was acting both as trustee for Ida Hanson and as administrator of the Hans Hanson estate and had money in his hands in both capacities, he should not receive credit as administrator for the discharge of any mortgage indebtedness that is properly chargeable to the trust estate of Ida Hanson. Hence, on the *Page 556 
record in its present condition the credits for the taxes upon the Ida Hanson land, for one-half the amount of the joint mortgages discharged and the similar proportion of the interest thereon should be disallowed in the account of the administrator. It does not appear, however, that it may not be possible to obtain evidence which would establish more definitely the relation of the parties with respect to this mortgage indebtedness. In the interest of justice such evidence, if obtainable, should be produced and the account adjusted accordingly. The modification, therefore, will be without prejudice to the right of either party to adduce further testimony in the district court which will have a bearing on the relation the parties sustain to the indebtedness evidenced by the joint notes and mortgages.
With respect to the contention that no credit should be given to the administrator for payments made on the mortgages covering the estate lands because claims were not presented and proved, little need be said. It is true that under our statute a mortgagee could not obtain a deficiency judgment against the estate of a deceased mortgagor unless the claim for such deficiency were presented as a contingent claim. Comp. Laws 1913, § 8736; Johnson v. Larson, 56 N.D. 207, 216 N.W. 895. But where no claim is filed and substantiated as required by statute (§ 8737), and the administrator upon settlement of his accounts shows to the satisfaction of the county court that such debt was justly due and was paid by the administrator in good faith, et cetera (§ 8738), the latter may properly be credited with the payment so made. An administrator need not suffer a foreclosure, at the instance of a mortgagee content with the security, at the peril of being personally charged should he pay the valid lien. He should, however, first obtain an order of the court (Comp. Laws 1913, § 8759), though this is not necessarily a prerequisite to approval by the court of such a payment after the fact (§ 8738, supra).
Concerning the widow's allowance, both the probate court and the district court credited the administrator's account with the full amount ($2,940) which would have been paid had the order been regularly complied with. The administrator was not directed to take receipts. He did pay for and on account of Ida Hanson substantial amounts of money in lump sums. There is no question but that she received the benefit of payments made by the administrator equivalent to the maximum *Page 557 
she would have received had the allowance been doled out in monthly payments. While it is true that the administrator held funds belonging to her personally from which those same payments might have been made, there is no reason for assuming that he was protecting the estate by withholding payments that were justly due to her and which had been ordered made. We can see no reason for disturbing the rulings of the probate court and the district court which credit the administrator with these payments.
The remaining contentions of the appellant are so obviously without merit as to require but brief attention. It is claimed that the record shows the 1919 thresh bill to have been paid twice. This is apparently based upon the fact that more than one receipt or voucher for this bill is in the files. Counsel point to no credit allowances in the account which would show more than one payment.
The evidence shows the hotel personal property was sold for an amount in excess of $500.00 and it is claimed that the administrator should be charged with the receipt of this amount instead of $375 as shown in the account. It is true the testimony of one Ruud shows that this property was sold for more than $500 or approximately $530.00, but the deposition of Helmer Hanson shows that he had a third interest in the hotel property. This readily accounts for the estate receiving but two-thirds of the proceeds of this sale and supports the account as rendered.
In conclusion we deem it proper to refer to a fundamental misconception which seems to characterize the efforts to adjust the account in question. Counsel for the appellant seem to be under the impression that in the event the Vrem payments are held to belong to Ida Hanson rather than to the estate the account with respect to such payments can be settled in closing up the estate of Hans M. Hanson in probate court. The contention is made that whether these payments are treated as funds of the estate or as funds of Ida Hanson "is merely a question of accounting practice and does not affect the result." It is said that if this money was paid to Greenland as an agent of Ida Hanson and by him expended for estate purposes, it would not follow that Greenland as administrator is entitled to credit for this fund and not required to account therefor; and it is assumed that in this event Ida Hanson might have a claim against the estate. Clearly, any money that came *Page 558 
into the hands of Greenland that did not belong to the estate but did belong to some other person does not become subject to the jurisdiction of the probate court either by reason of being deposited in a bank account carried in the name of the administrator or by reason of the fact that the owner of the fund happens to be interested as an heir or otherwise in the estate.
For the reasons stated, the judgment of the district court is modified to the extent that the payments made by the administrator on account of joint mortgages executed by Hans Hanson and Ida Hanson are to be apportioned and the administrator in his account credited only with the money applied to discharge the mortgages on the Hans Hanson land. As thus modified, the judgment of the district court is affirmed, without prejudice, however, to the right of either party to introduce additional evidence in the district court bearing upon the relations of Ida Hanson and Hans Hanson to the mortgage indebtedness secured on their separate properties and to such further modification of the judgment as the district court may make in the light of such evidence. Neither party will recover costs on this appeal.
BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.
 (On Petition for Rehearing.)