Sharpe v. Sharpe.

---

No. 26,481.

EDNA G. SHARPE, WILLIAM SHARPE, a Minor, by His Next Friend, EDNA G. SHARPE, Heirs at Law of CHAUNCY L. SHARPE, Deceased, *Appellants,* v. CHAUNCY L. SHARPE, a Minor, LEE WAGNER, Ancillary Administrator of the Estate of CHAUNCY L. SHARPE, Deceased, and LEE ULLOM, *Appellees.*

SYLLABUS BY THE COURT.

EXECUTORS AND ADMINISTRATORS—*Sale of Real Property—Notice of Hearing—Fraud.* In an action to set aside an administrator's sale of real property to pay debts, and the deed executed in pursuance thereof, on the grounds of fraud and invalidity of the proceedings, the record is examined and held (1) to support the judgment that there was no fraud sufficient to justify setting them aside; (2) there is no fatal invalidity in the proceedings.

Appeal from Gray district court; LITTLETON M. DAY, judge. Opinion filed February 6, 1926. Affirmed.

*H. O. Trinkle,* of Garden City, for the appellants.

*Carl Van Riper,* of Dodge City, and *Lester Luther,* of Cimarron, for the appellees.

---

Executors and Administrators, 24 C. J. pp. 594 n. 51, 630 n. 94, 673 n. 3, 679 n. 16, 86.

The opinion of the court was delivered by

HARVEY, J.: This is an action to set aside an administrator's sale of real estate and the administrator's deed issued in pursuance thereof, on the grounds of fraud and invalidity of the proceedings. It was tried to the court and a general judgment was rendered for defendants. The plaintiffs have appealed.

In March, 1915, Lula E. Sharpe was granted a divorce from her husband, Chauncy L. Sharpe, in the district court of Shawnee county, and was awarded the custody of their child, Chauncy L. Sharpe, Jr., then sixteen months of age. By a written agreement, made before the decree was entered, the defendant in that case agreed to pay to the plaintiff, for the maintenance and support of the child, the sum of $25 each month, until the child should reach the age of majority, and a judgment to that effect was embodied in the decree. Later, Chauncy L. Sharpe married, the second wife being Edna G. Sharpe. They had one child, William Sharpe. While residing in Iowa, Chauncy L. Sharpe died intestate in December, 1920. At the time of his death he owned three quarter sections of land in Gray county, and an ancillary administrator was appointed in that county. Thereafter, Lula E. Sharpe filed in the probate court of Gray county a claim against the estate of Chauncy .L. Sharpe for the sum then due and to become due upon the written agreement and decree above mentioned, and that claim was allowed January 6, 1923, in the sum of $3,159.80. On February 13, 1923, the ancillary administrator, Ralph Lee Wagner, filed a petition for an order to sell the Gray county real estate to pay debts. The court made an order setting a time and place for the hearing of the petition, "and that said administrator give notice thereof by publication in three consecutive issues of the *Jacksonian*, a newspaper published and of general circulation in Gray county." Upon the hearing of this petition the court made an. order for the sale of the real property at public or private sale, as to the administrator may seem most advantageous to the interest of the estate, for the appraisement of the land, and the selling price to be not less than three-fourths of the appraised value if sold at private sale. Appraisers were appointed, who qualified and appraised the land at $10 per acre, which amounts to $4,800, and made their report to the court March 8. On March 16 the administrator reported a sale of the three quarter sections of land to Lee Ullom at private sale for $3,875.

This sale was approved, and an administrator's deed was executed and approved March 22, and later delivered and the purchase money paid.

In August, of the same year, this action was brought by Edna G. and William Sharpe. The trial court was justified in finding there was no fraud in the proceedings which required the order of sale and deed to be set aside. A number of contentions are made, but none of them has substantial merit. It is contended that the probate court erred in allowing the claim for more than $700, the sum then due, and that it had no authority to allow the claim for future payments. There was a contract and a decree requiring Chauncy L. Sharpe to make the future payments. He had died, and of necessity they had to be paid out of his estate. There is no question but. that they were properly computed at their present worth, but it is argued that in the contingency that the minor, Chauncy L. Sharpe, Jr., should not live to attain his majority there would not be so much due. If he should live until that time there is no error in the judgment. It would be both expensive and inconvenient to hold the estate open for several years on account of that contingency. That judgment was not appealed from, and hence we are not determining the question of whether it was erroneous. There was no lack of jurisdiction to consider the claim, nor is there any indication of fraud in allowing it. It was alleged that there was fraud among the administrator, appraisers and Ullom, but the testimony of all the witnesses failed entirely to show anything that indicated any fraudulent appraisement or collusion of any character to the detriment of the estate. The evidence did show that Avery & Keesling, real-estate dealers, were the real purchasers of the property; that they, or one of them, went to Ullom and arranged with him to go to Wagner and buy this property for them, and they furnished the purchase price. This was done for purposes of their own. It is not unusual for a person or firm to have an agent buy property for them, and there is nothing about this which indicated fraud. Keesling was a surety on the bond of the administrator, and since it developed that Avery & Keesling were the real purchasers it is argued that it is fraud for an administrator to sell to his surety. But this alone does not constitute fraud (*Fincke v. Bundrick*, 72 Kan. 182, 83 Pac. 403); it is simply one of the matters for the court to look into and to consider in determining whether there was fraud. It is argued that the land was worth double the appraised value. The best that can be said upon that matter is that the evidence was conflicting, by

far the greater weight being that the appraisement was fair and reasonable. It was at a time of depressed values for real property in that part of the state, resulting in part from the general reduction of farm values at that time and in part from the fact that there had been poor crop seasons for two or three years in succession in that immediate part of the state. Local farmers were unable to buy, and even the witnesses who testified that the property was worth more money stated that, owing to the depressed condition of farm values and repeated poor crops, the selling of farm land for cash was exceedingly difficult. There is evidence that for some months the administrator, understanding the land would have to be sold, had been making efforts through various sources to interest buyers in it, and Ullom was the only purchaser he found to be even interested in buying it.

The matters alleged as to the proceedings in the probate court which rendered them invalid also lack merit. It is contended that the administrator was not present or represented at the time of the allowance of the claim. The claim was presented to the administrator as required by statute (R. S. 22-713); no question is raised as to that. The journal of the allowance of the claim shows an appearance of the administrator by his attorney of record. There was testimony that the attorney for the claimant and the attorney for the administrator went over the claim and the proofs of it just before the hearing and order, but that the attorney for the administrator was not present in the court room at the time the order was made, but did know of and approve the proceedings. This evidence was not sufficient to defeat the effect of the recital in the journal of the court that the administrator was represented by his attorney. (*Miller v. Miller,* 89 Kan. 151, 130 Pac. 681; *Bank v. Security Co.,* 65 Kan. 642, 70 Pac. 646.)

It is next argued that the notice of the hearing of the petition for the sale of real property was fatally defective. The statute provides:

"The court shall require notice of the petition, and of the time and place of hearing the same, to be given for such length of time and in such manner as the court may see proper." (R. S. 22-805.)

In this case the court did make an order fixing the time and place of the hearing of the petition and requiring that the "administrator give notice thereof by publication in three consecutive issues" of a named newspaper published and having a general circulation in the county. Notice was given in conformity to that order, and the proof

thereof was made to the court. This notice was entitled, "To all persons interested in said estate and to whom it may concern." Complaint is made that the names of the heirs of Chauncy L. Sharpe were not in the notice. The order of the court did not specifically require that they be named, and the notice did run to them if they were interested or concerned.

Finding no error in the record, the judgment is affirmed.